

# Independent Representative Agreement

*between*

## BIOTRONIK, Inc.

*and*

## CHARAN G. REDDY
### Rep Principal
## CHARAN MEDICAL INTERNATIONAL, Inc.
### Charan G. Reddy, President



EXHIBIT

*A*

# TABLE OF CONTENTS

Page

The Parties to this Agreement are:

    Biotronik, Inc. .......................................... 1

    Representative ....................................... 1

The Parties Recite: ...................................... 1

    Biotronik as Distributor .......................... 1

    Representative as Independent Contractor ... 1

    Services of Representative .................... 1

The Parties Agree: ...................................... 1

| 1]  | Term | 1 |
|-----|------|---|
| 2]  | Engagement | 1 |
| 3]  | Independent Contractor | 2 |
| 4]  | Sales Territories | 2 |
| 5]  | Sales Quotas | 2 |
| 6]  | Compliance with Law | 3 |
| 7]  | Limitation on Authority | 3 |
| 8]  | Assignment | 3 |
| 9]  | Associate Representatives | 3 |
| 10] | Covenant Not to Compete | 4 |
| 11] | Covenant Not to Compete [Post-Termination] | 5 |
| 12] | Trade Names, Trademarks, Advertising, the Use Thereof, and Labeling | 5 |
| 13] | Twenty-four Hour Service | 5 |
| 14] | Sales Costs and Liabilities | 6 |
| 15] | Sales Procedures | 6 |
| 16] | Sales Assistance | 7 |
| 17] | Consigned Products | 7 |
| 18] | Use of Dated Products | 8 |
| 19] | Loaned Products | 8 |
| 20] | Shipping and Billing Procedures | 9 |
| 21] | Delivery and Handling Procedures | 9 |
| 22] | Records | 9 |
| 23] | Commissions | 12 |

## _TABLE OF CONTENTS_                2

| | | Page |
|---|---|---|
| 24] | Commission Payment | 13 |
| 25] | Commissions Withheld | 13 |
| 26] | Commission Discrepancies and Additional Offsets Against Commissions | 13 |
| 27] | Claims | 14 |
| 28] | Use of Biotronik Information | 14 |
| 29] | Licenses | 15 |
| 30] | Activities of Biotronik | 15 |
| 31] | Indemnification | 15 |
| 32] | Waiver | 16 |
| 33] | Limitations | 16 |
| 34] | Binding Effect | 16 |
| 35] | Amendments | 16 |
| 36] | Notices | 16 |
| 37] | Prior Agreements | 16 |
| 38] | Termination | 17 |
| 39] | Effects of Termination | 18 |
| 40] | Damages Upon Improper Termination or Default | 18 |
| 41] | Confidentiality | 18 |
| 42] | Attorney's Fees | 18 |
| 43] | Choice of Law | 18 |
| | Agreement Signatures | 19 |
| | Representative and Bank Information [Addendum] | 20 |
| | Territory to be Covered Under Section 4 [Exhibit A] | 23 |
| | Minimum Monthly Sales Quotas Under Section 5 [Exhibit B] | 25 |
| | Commissions to be Paid Under Section 23 [Exhibit C] | 26 |
| | Revised Tachycardia Commission Schedule [Exhibit D] | 28 |
| | Inventory Insurance Coverage [Exhibit E] | 30 |
| | BIOTRONIK Product and Event Reporting [Exhibit F] | 32 |

# INDEPENDENT REPRESENTATIVE AGREEMENT

The Parties to this Independent Representative Agreement ("Agreement") are:

BIOTRONIK, Inc., an Oregon Corporation, ("Biotronik"),

and

Charan G. Reddy, Rep Principal, and Charan Medical International, Inc. (CMI, Inc.), Charan G. Reddy, President ("Representative").

## The Parties Recite:

A]   Biotronik is engaged in the business of marketing, selling, and distributing certain cardiac pacing products, processes, and services ("Products"), as outlined in Exhibit C, throughout the United States.

B]   The Representative desires to be engaged as an independent contractor sales representative for Products in those territories ("Territory") as defined in Exhibit A.

C]   Biotronik has elected to engage the services of the Representative based upon representations made by the Representative concerning the Representative's background and skills and the Representative's representation that the execution and performance of this Agreement is not and will not be in violation of any agreement, obligation, or duty to any other individual or entity.

## The Parties Agree:

1]   Term.

   a]   The term of this Agreement shall begin on the 1st day of August, 2005 and shall end on the 31st day of July, 2010, (5 years) unless terminated earlier as provided herein.

   b]   After the scheduled termination date set forth in the preceding subparagraph a], this Agreement shall be automatically extended for successive one-year periods unless otherwise terminated as provided in this Agreement.

   c]   Either party may give written notice of its intent to terminate at least ninety (90) days prior to the end of the initial term of five (5) years or the end of any one-year extension of that initial term.

2]   Engagement.

   a]   Biotronik engages the Representative to promote, sell, distribute and service Products and the Representative accepts such engagement.





b] The Representative agrees to maintain a high degree of technical knowledge and proficiency regarding the operation and use of Products and shall require all of its employees, salespersons, agents, and associate representatives to maintain the same level of proficiency.

c] The Representative agrees to take all actions which may be necessary or appropriate to sell Products in all portions of the Representative's sales Territory including, without limitation, those which may be requested by Biotronik from time-to-time.

d] The Representative agrees to provide service to physicians, hospitals, clinics and allied health professionals when required.  Refusal to provide service is a violation of contract.

3] **Independent Contractor.**

a] This Agreement shall not be construed to create a joint venture, a partnership, or an employer/employee relationship between Biotronik and the Representative.

b] The Representative is an independent contractor and no monies will be paid by Biotronik or deducted from the Representative's compensation to pay for federal, state, or local taxes, Social Security, or unemployment compensation.

4] **Sales Territories.**

a] Biotronik and the Representative agree that the Representative shall be authorized to conduct activities described in this Agreement in the Territory or areas described, marked and outlined in the attached Exhibit A.

b] The Representative shall neither solicit orders nor sell Biotronik Products outside the Territory.

5] **Sales Quotas.**

a] The Representative agrees to devote sufficient time and efforts in the Territory to effect the sales of Products and to provide customer service so as to achieve those quotas for firm net sales described in the attached Exhibit B.

b] If there is any failure to meet such quotas, Biotronik in its sole discretion may terminate this Agreement as provided in Paragraph 38 or alter or change the Representative's Territory in any manner which Biotronik deems to be appropriate.





c]     Biotronik retains the right to take back any hospital accounts in the Representative's Territory in which Representative has failed to sell five or fewer pacemakers or five or fewer defibrillators or in which the minimum combined total revenue was less than $100,000 in any given fiscal year (January – December).  This option is not enforceable until the first full fiscal year has been completed.

6]     Compliance with Law.

    a]     The Representative shall comply with all laws, rules, regulations and other requirements of all federal, state, and local governments and authorities.

    b]     The Representative shall obtain all necessary licenses and permits, and shall provide evidence of the same to Biotronik upon request.

7]     Limitation on Authority.

    a]     The Representative shall have no authority, nor shall the Representative represent or imply that it has any authority, to enter into any contract or agreement in the name of or binding upon Biotronik.

    b]     The Representative shall have no authority to make any warranty or representation concerning the performance, quality or characteristics of any Product except as may be authorized by Biotronik in writing.

8]     Assignment.

    a]     The Representative's duties under this Agreement are personal and shall not be delegated.

    b]     The Representative shall not assign its rights or its obligations under this Agreement.  If Representative is a corporation, then it may not transfer or sell stock to any other entity or person by merger, operation of law, devise, gift, inheritance or otherwise without the prior written notification of Biotronik.

9]     Associate Representatives.

    a]     The Representative shall be entitled to employ or engage as many employees, salespersons, agents, or associate representatives as the Representative deems appropriate.   However, the Representative shall cause all such employees, salespersons, agents, and associate representatives to execute legally-binding





agreements with the Representative which are satisfactory to Biotronik. Biotronik shall not unreasonably withhold its consent to such agreements, provided that they contain confidentiality, standards of performance, and non-competition requirements which are substantially similar to those which are set forth in this Agreement. The compensation provisions in such agreements need not be disclosed to Biotronik.

b] By any such agreement, the Representative hereby authorizes Biotronik to institute such actions which Biotronik, in its sole discretion, may deem appropriate to enforce, in the name of the Representative or in the name of Biotronik, any of the terms or provisions of such agreements, save and except matters involving compensation, and to recover and retain such damages or injunctive relief which might be applicable.

c] All such agreements shall provide that the employees, salespersons, agents, or associate representatives are the agents or employees of the Representative only, that the Representative is not acting on behalf of Biotronik in contracting for their services, and that the Representative is solely responsible for the payment of any compensation.

d] Such employees, salespersons, agents, or associate representatives shall not be permitted to take any action which Representative is not permitted to take under this Agreement. To the extent this Agreement may be modified or amended at any time in connection with confidentiality, standards of performance, or non-competition, such agreements with employees, salespersons, agents, or associate representatives shall be amended to reflect such changes.

e] The Representative will promptly notify Biotronik of the names, addresses, and sales territories of all the employees, salespersons, agents, or associate representatives of the Representative who are engaged in the sale or service of Products, as well as all changes in such personnel.

10] Covenant not to Compete.

During the term of this Agreement, the Representative shall not, directly or indirectly, assist or render services to or for any individual or entity engaged in or about to become engaged in research on or development, production, marketing, or sales of any good or service in existence or under development which is the same as or similar to any Product, which has been, is being, or will be offered by Biotronik.





11]   Covenant not to Compete (Post-Termination).

    a]   For a period of one year following the termination of this Agreement, the Representative shall not, directly or indirectly, contact or solicit any client, customer or physician located within the Territory or any amendment hereto with whom the Representative had any contact on behalf of Biotronik within twelve (12) months preceding the date of the termination of this Agreement for the purpose of developing, producing, marketing, or selling any good or service which is the same as or similar to any Product which has been, is being, or will be offered by Biotronik.

    b]   In addition, during the same period, the Representative will not seek to induce or influence any other Biotronik sales representative or employee, or any employee, agent, or associate representative of any other Biotronik sales representative to terminate his/her relationship with Biotronik.

12]   Trade Names, Trademarks, Advertising, the Use Thereof and Labeling.

    a]   During the term of this Agreement, the Representative shall indicate on its Biotronik-related printed material that it is the "AUTHORIZED INDEPENDENT SALES REPRESENTATIVE" for Products or may use any other designation approved in writing by Biotronik.

    b]   Use of Biotronik letterhead stationery and envelopes is permitted as long as Representative's name and "Independent Representative" are printed on the stationery and envelopes.  This is a Corporate requirement.  Any use by the Representative of the trade names, logos, or trademarks of Biotronik shall be to the benefit of Biotronik.

    c]   Biotronik may use the Representative's trade name, logos, or trademarks, and designate the Representative as the "AUTHORIZED INDEPENDENT SALES REPRESENTATIVE" for its Products.

    d]   Labels and labeling, as those terms are defined by FDA rules or regulations, for any Product shall be only as provided by Biotronik and shall not be removed or altered by the Representative or any employee, salesperson, agent, or associate representative of the Representative.

13]   Twenty-four Hour Service.

    a]   Representative shall maintain 24-hour telephone answering and paging services to provide service and technical information in Representative's Territory as outlined in Exhibit A.




b]   All telephone or paging requests must be returned within an expediently adequate response time which shall be no more than 45 minutes.

c]   All costs relating to such telephone answering and paging services will be paid solely by the Representative.

d]   If the Representative travels outside the range of its paging service or leaves its Territory, advance notice to Biotronik must be provided in a manner and within a time period which is acceptable to Biotronik.

14]  Sales Costs and Liabilities.

a]   All costs, expenses, and liabilities which the Representative may incur in connection with its activities under this Agreement shall be borne solely by the Representative, except as otherwise provided in this Agreement.

b]   The Representative agrees to indemnify, defend, and hold Biotronik harmless for all costs, expenses, and existing and potential liabilities to any individual or entity resulting from any alleged intentional and negligent actions or failures to act on the part of the Representative or its employees, salespersons, agents and associates representatives.

15]  Sales Procedures.

a]   The Representative shall solicit orders only for the purchase of those Products which are authorized by Biotronik in writing from time-to-time to be sold.

b]   All prices and terms of purchase shall be specified by Biotronik. The Representative shall not increase, reduce, discount, rebate or modify any Products, prices or terms without the prior written consent of Biotronik.

c]   The parties agree that the sale of Products frequently occurs on a competitive bid or other negotiated basis which results in a discount from the list price. Biotronik has established a minimum sales price ("Trigger Price") for its respective Products, below which Representative will receive a reduced commission. The parties agree that, if the actual sales price is less than the Trigger Price, Representative's commission will be reduced according to the published discount policy in force during any given fiscal year. Biotronik may, in its sole discretion, change the Trigger Price for any Product at any time. Although Biotronik will not publish Trigger Prices, Representative will be informed when the actual sales price is below the Trigger Price for a particular Product. Biotronik will also inform Representative





when Biotronik has reached agreement with a particular customer for a sales price below the Trigger Price for particular Products.

16] Sales Assistance.

    a]    Biotronik may deliver materials related to its Products to the Representative for demonstration and sales assistance purposes in such quantities as Biotronik deems necessary and appropriate from time-to-time.  Such materials and Products shall remain owned only by Biotronik.

    b]    The Representative shall be obligated to pay to Biotronik for all loss, damage, or destruction of such materials and Products based on the cost basis of products lost, damaged or destroyed (see Section 17 d] Consigned Products.

17] Consigned Products.

    a]    From time-to-time and in its sole discretion, Biotronik may consign Products to existing or potential customers of the Representative.

    b]    All such Products consigned either directly by Biotronik or through the Representative may be withdrawn by Biotronik at any time without the consent of the Representative.

    c]    Immediately upon request by Biotronik, the Representative shall obtain possession of and return to Biotronik any consigned Products.

    d]    Any Product that is out-of-date, lost, stolen or opened by mistake within the Sales Representative's Territory will be assessed the following charge:

| | |
|---|---|
| Pacemaker | $2,000 |
| ICD | 7,000 |
| Lead – Bradycardia | 250 |
| Lead – Tachycardia | 2,000 |
| Demo – Pacemaker/ICD | 500 |
| Programmer | 1,500 |
| Analyzer | 1,000 |





18]   Use of Dated Products.

    a]   · The Representative shall not deliver to any individual or entity any Product which has a later "use before" date than any other of the same Product in the Representative's possession or control.

    b]   Biotronik will provide written notice to the Representative regarding the pending expiration of the "use before" dates on Products which have been placed in possession or control of the Representative but have not yet been sold.  Upon receipt of any such written notice, the Representative shall immediately obtain possession of any such Product and deliver it to Biotronik at 6024 Southwest Jean Road, Lake Oswego, Oregon 97035.

    c]   Even if such notice is not provided, the Representative shall deliver any Product in the Representative's possession or control prior to the expiration of the "use before" date.  In the event that the Representative fails to return any such Product to Biotronik prior to the "use before" date identified with that particular Product, the Representative shall indemnify, defend, and hold Biotronik harmless for any loss, damage, injury or other consequence which may directly or indirectly result therefrom.

    d]   Resterilization of all sterilized Products must be performed only by Biotronik or those agents specifically authorized in writing by Biotronik to perform such resterilization.

    e]   The Representative shall not sell or implant any product that has exceeded its "use before" date (expired product).


19]   Loaned Products.

    a]   To the extent permitted by law, and in the sole discretion of Biotronik, Biotronik from time-to-time may loan Products for follow-up purposes to patients using Biotronik Products.

    b]   The Representative shall maintain accurate monthly records in a form acceptable to Biotronik regarding all such Products which are loaned to persons located in the Representative's Territory, and shall submit those records to Biotronik not later than the fifteenth day of each calendar month, as requested by Biotronik.

    c]   At the request of Biotronik, Representative shall obtain possession of any such loaned Products and deliver same to Biotronik.





20]   Shipping and Billing Procedures.

    a]   Biotronik, in its sole discretion, shall control all shipments, allocations, billings, collections, adjustments and compromises of accounts which relate to any of its Products which are sold or agreed to be sold.

    b]   All purchasers of Products shall be notified by the Representative that payment is to be made directly to Biotronik, and that all checks, money orders and other instruments are to be made payable to Biotronik only.

    c]   The Representative will not receive or accept any cash or any instrument drafted as payable to the Representative in connection with the performance of the Representative's duties hereunder for **any** Product provided by Biotronik, even if the Product was provided by Biotronik at no charge, save and except commissions payable by Biotronik directly to the Representative.

    d]   At the request of Biotronik, the Representative shall assist Biotronik in the collection of overdue accounts, but only in the manner and form required by Biotronik.

21]   Delivery and Handling Procedures.

    a]   In its discretion, Biotronik may deliver Products directly to prospective purchasers or to the Representative for future delivery to prospective purchasers.

    b]   The Representative may deliver Products to prospective purchasers on a "consignment," "loan," as well as on a "firm net sale," basis and must provide notification to Biotronik of all such deliveries. The quantities of Products delivered to the Representative for "firm net sale," "consignment," or "loan" purposes shall be determined solely by Biotronik.

    c]   Until Biotronik has accepted a written purchase order for Products delivered, such Products shall remain owned only by Biotronik, and the Representative shall be obligated to pay to Biotronik per Section 17 d], Consigned Products.

22]   Records.

    a]   The Representative shall provide information concerning the following matters to Biotronik in such form as specified by Biotronik:

        a.1]   All sales of Products and implantations;





a.2]  Contacts with and information concerning users or potential users of Products; and

a.3]  Pertinent information concerning physicians and others who may utilize Products.

b]  For all Products which are delivered on consignment, the Representative shall obtain from the consignee a fully-executed and dated document acceptable to Biotronik which sets forth the terms of such consignment. The document shall set forth the following information:

b.1]  The model name and serial number of the Product;

b.2]  Date of delivery of consignment;

b.3]  Consignee's full name and address; and

b.4]  Signature of consignee as proof of delivery.

c]  For all deliveries of Products by the Representative on a firm net sale basis, the Representative shall set forth on a sales slip the following information:

c.1]  The model name and serial number;

c.2]  Date of delivery to the purchaser;

c.3]  Full name and address of purchaser;

c.4]  Price and terms of sale;

c.5]  The purchase order number issued by the purchaser; and

c.6]  The signature of an authorized representative of the purchaser as proof of delivery. If the Product was previously delivered on a consignment basis, the signature of the authorized representative of the purchaser acknowledging that the Product is no longer consigned, but is sold, will be required.

d]  When a Product which was delivered on a consignment basis is sold, a sales slip containing the information in Subparagraph 22 c] above shall be provided to Biotronik.

e]  Upon receipt by the Representative of a purchase order number regarding a firm net sale, the Representative must immediately notify Biotronik by telephone of such purchase order number.





f]   All sales slips (Purchase Order numbers) regarding firm net sales in any calendar month must be received by Biotronik not later than the last working day of the month. For commission payment purposes, sales slips (Purchase Order numbers) received by Biotronik after the last working day of any month for sales made in that month shall result in the sale being deemed to have been made in the month in which the sales slip (Purchase Order number) was received by Biotronik. Note: Under certain conditions, Biotronik reserves the right to use implant date as the date the sale will be formally recorded as a sale and formally recorded for commission purposes or calculation of payments of any type.

g]   Biotronik shall periodically issue printouts or similar compilations of all Products which have been delivered to the Representative but have not yet been sold. The Representative shall immediately review the printout and, if the Representative agrees with the information contained therein, sign and date the printout and return it to Biotronik within fourteen (14) calendar days after its dispatch from Biotronik unless other instructions are given.

h]   If the Representative does not agree with the information set forth in the printout or compilation, the Representative shall immediately contact Biotronik by telephone and attempt to reconcile any discrepancies. If reconciliation cannot be made within this 14-day period, the Representative shall sign and return the printout or compilation with a written statement describing the discrepancy and the Representative's opinion of what Products are in the Representative's custody and control. In the event that such written statement is not provided as required, the Representative shall be deemed to have accepted Biotronik's printout or compilation as accurate.

i]   If the written statement is submitted as required, and the parties are unable to reconcile the discrepancies within thirty (30) calendar days, the Representative may audit that portion of Biotronik's books and records relating to the purchase orders received, shipments made and collections received on sales made by the Representative, provided that notice of intent to conduct such audit is provided in writing to Biotronik within thirty (30) calendar days after the above thirty (30) day period, and the audit is actually conducted within sixty (60) calendar days after such notice.

j]   Biotronik may, at any time, audit the Representative's books and records for any purpose relating to Products in accordance with the terms of this Agreement. If the Representative fails to comply with this Paragraph 22 j, Biotronik may take whatever action it deems appropriate, including cessation of all deliveries to the Representative.





23]   Commissions.

a]   Biotronik agrees to pay commissions on sales of Products made by the Representative as described in the attached Exhibit C.  With the exception of those charge-back and post-termination commission provisions of this Agreement, or any special sales incentive programs which may be offered by Biotronik from time-to-time, a commission shall be earned by the Representative when Biotronik accepts a written Purchase Order executed by a customer.  All Purchase Orders solicited by the Representative shall be subject to acceptance by Biotronik.  Pricing must be acceptable to Biotronik management prior to all sales to ensure that said Purchase Orders are acceptable.  If pricing is not acceptable, Biotronik in its discretion may refuse the sale, reduce the commission based on mutual acceptance of the Representative and Biotronik management, or increase the selling price.  Biotronik reserves the right, in its discretion, to reject any Purchase Order which fails to meet the Company's sales criteria.

b]   Commission payments are made by direct deposit only.  In this matter, Biotronik guarantees that Representative will receive the appropriate commission funds effective on or before the 15th of each month.

c]   Biotronik reserves the right to discontinue at any time the sale of any Product and to allocate Products during periods of shortage without incurring any obligation to the Representative.

d]   All commissions earned and paid are subject to charge-backs for sales that are made but for which Biotronik does not receive payment in full.  The charge-back amount will be equal to the entire commission paid.

e]   If and when funds are actually received by Biotronik, commissions will be paid at the applicable commission rate on the actual amount received less collection costs and attorney's fees.

f]   Upon any breach of any term or condition of this Agreement by the Representative, all rights of the Representative to receive commissions or other compensation shall be deemed terminated and waived by the Representative.

g]   If this Agreement is terminated by either party and the Representative has not breached any of the terms and conditions of this Agreement, all unpaid commissions will be paid based upon amounts actually received by Biotronik less costs of collection and attorney's fees.





*Independent Representative Agreement between BIOTRONIK, Inc.,*
*and CHARAN G. REDDY, Rep Principal,*
*and CHARAN MEDICAL INTERNATIONAL, Inc. (CMI, Inc.) Charan G. Reddy, President*          13

24]   Commission Payment.

    a]   Not later than the fifteenth day of each calendar month, Biotronik shall dispatch to the Representative a list of all Products which have been sold and invoiced by Biotronik in the immediately-preceding month on which commissions have been earned by the Representative, together with a commission payment.

    b]   Commission payments shall be transmitted directly to Representative's receiving bank account as outlined on the Addendum of this Agreement. Information must be given in its entirety before any commissions will be paid.

25]   Commissions Withheld.

In the event that the Representative fails to provide any slips, reports, or other information required under this Agreement, or otherwise reasonably requested by Biotronik from the Representative, Biotronik shall be authorized to withhold all or any portion of any amounts which are or may become due and payable by Biotronik to the Representative until the discrepancy/deficiency has been resolved.

26]   Commission Discrepancies and Additional Offsets Against Commissions.

    a]   Biotronik reserves the right to issue credits against any amount due and owing in connection with any sale made by the Representative and further reserves the right to reduce any amount which any customer of the Representative owes to Biotronik. In such event, the commission applicable to the amount of the credit or reduction may be offset by Biotronik against all or any portion of any amounts which are or may become payable by Biotronik to the Representative. The published retail price less commission or the fair market value of all lost, damaged or destroyed Products and materials after they have been placed in the possession of the Representative may be similarly offset.

    b]   Biotronik may offset all or any portion of any advances made by Biotronik to the Representative, as well as any other amounts owed by the Representative to Biotronik.

    c]   Nothing herein shall create any right on the part of the Representative to receive any advances.

    d]   In the event that the Representative feels that the appropriate amount of compensation due at any time has not been received, it shall be the obligation of the Representative to submit to Biotronik a written explanation of the nature of the





        discrepancy within fifteen (15) calendar days after the date when the applicable payment or statement of account is submitted by Biotronik to the Representative.

e]     The failure to submit such written statement within fifteen (15) calendar days after receipt by the Representative of such payment or statement of account shall constitute a waiver on the part of the Representative of any claim related to such discrepancy.

f]     The rights of offset in this Agreement shall be in addition to all other rights or remedies which Biotronik may have at law or in equity.  All amounts which may be offset by Biotronik under this Agreement shall constitute debts of the Representative to Biotronik which are payable by the Representative upon demand.

27]  Claims.

a]     The Representative shall provide written notice to Biotronik within ten (10) calendar days after receipt of any claim or complaint regarding any Product.  Such written notice shall set forth the names and addresses of all persons associated with such claim or complaint, together with a written description of the nature of the claim or complaint.

b]     All discussions relating to the quality, performance, and delivery of Products shall take place only between the Representative and Biotronik, except as otherwise agreed by the parties in writing and except as otherwise provided by law.

28]  Use of Biotronik Information.

a]     The Representative agrees not to disclose any business, trade secrets or confidential information concerning Products obtained from Biotronik or any other source to any other individual or entity and shall forever keep secret and refrain from making use of the same without the written consent of Biotronik.

b]     Business, trade secrets and confidential information shall include the following: financial information concerning Biotronik; any information about its employees or Products; reliability data; processes; existing or prospective customers; physicians who have utilized or have considered utilizing Products; services provided by Biotronik or its current or prospective independent sales representatives; any purchasing, finance, data processing, marketing, merchandising, loan, consignment or sales activities; plans of Biotronik or its current or prospective independent sales representatives; and any other information about Biotronik, its employees, Products or its activities which are not generally known to the pacemaker industry.





c]   Except as required by law, all claims and complaint information concerning Biotronik, its employees, Products or practices shall also be considered confidential information. The obligations of the Representative in this Paragraph 28 shall continue during the life of this Agreement and for a period of ten years after any termination hereof.

29]   Licenses.

No license, expressed or implied, under any patents or licensing agreements for any use of Products is granted by Biotronik to the Representative hereunder.

30]   Activities of Biotronik.

Biotronik personnel are authorized to enter the Representative's Territory at any time for the purpose of servicing customer accounts; *i.e.,* patient follow-up.

31]   Indemnification.

a]   Biotronik hereby agrees to indemnify, defend and hold harmless the Representative and its directors, officers, employees, and associate representatives against liability, loss and damage to third parties arising from infringements or claims of infringements of any claimed patent rights relating to Products.

b]   Biotronik further agrees to indemnify, defend and hold harmless the Representative and its directors, officers, employees, salespersons, agents and associate representatives against liability, loss or damage to third parties arising out of or based upon any design or manufacturing defect of Products. Biotronik shall have the right to assume the defense of any claim, notice of claim or legal proceeding.

c]   The Representative agrees to cooperate with Biotronik and its attorneys or agents in any such claim or legal proceeding. Biotronik agrees to reimburse the Representative for any attorney's fees or costs incurred incident to compliance with this Paragraph 31. The provisions in this Paragraph 31 shall not apply to any liability, loss or damage which results, directly or indirectly, from the failure of the Representative or its employees, salespersons, agents or associate representatives to comply with any of the terms or conditions set forth in this Agreement, or from any intentional or negligent actions on the part of the Representative, its employees, salespersons, agents or associate representatives.





32]   Waiver.

The waiver by either party of any breach of any term or condition of this Agreement shall not operate or be construed as a waiver of any subsequent breach by either party.

33]   Limitations.

The word "including" in this Agreement when followed with a listing shall mean including, without limitation.

34]   Binding Effect.

This Agreement shall be binding upon and shall avail to the benefit of Biotronik and the Representative, as well as their successors in interest.

35]   Amendments.

No amendment or variation of the terms or conditions of this Agreement shall be valid unless the same is in writing and signed by all of the parties hereto.

36]   Notices.

Any notice permitted or required under this Agreement shall be deemed to have been given when there is proof of delivery to the respective party.

37]   Prior Agreements.

a]   The parties agree that this Agreement fully-replaces all prior or contemporaneous oral or written agreements between the parties.  This Agreement and the Exhibits attached hereto constitute the entire Agreement between the parties and cannot be changed or modified except by a subsequent written agreement signed by both parties.

b]   However, Biotronik may establish guidelines regarding the solicitation, sale or use of its Products from time-to-time which are not inconsistent with the terms and conditions of this Agreement, and the Representative shall be obligated to comply with such guidelines notwithstanding the absence of a written agreement signed by the Representative.





    c]    If any provision in this Agreement is judicially determined to be illegal or void, the validity of the remainder shall not be affected and the rights and obligations of the parties shall be construed and enforced as if this Agreement did not contain such provision.

38]    **Termination.**

    a]    Either Biotronik or the Representative may terminate this Agreement, without cause, upon delivering written notice to the other party not less than ninety (90) calendar days prior to the last day of the original or any successive term of this Agreement.

    b]    Biotronik at any time may terminate the Representative's rights under this Agreement for any of the following causes or upon any of the following events:

        b.1]    Failure to meet established sales quotas. Quotas must be maintained on a quarterly basis. Failure to achieve the cumulative quota during any given quarter allows Biotronik the right to modify or terminate this Agreement. Failure to achieve annual quotas gives Biotronik the right to automatically terminate this Agreement.

        b.2]    A breach of the Representative directly, or through its employees, salespersons, agents or associate representatives of any of the terms or conditions set forth in this Agreement;

        b.3]    Upon discovery by Biotronik that the Representative has made any misrepresentation to Biotronik in connection with the execution of this Agreement;

        b.4]    The Representative, any of its owners or shareholders, or any of its officers or directors, becomes insolvent or bankrupt, or a petition be made to have any of them declared insolvent or bankrupt, or a receiver or trustee be appointed, or any of them making an assignment for the benefit of creditors;

        b.5]    The Representative's financial, health or other condition or circumstance in the sole judgment of Biotronik, be such as to endanger the ability of the Representative to perform its functions hereunder;

        b.6]    The Representative shall at any time conduct itself or its business in such a manner as, in the sole judgment of Biotronik, might adversely affect the name, reputation or goodwill of Biotronik; and

        b.7]    The Representative shall fail to engage in reasonable promotion of Products.





39] Effects of Termination.

    a]    Immediately upon termination, all Products and other materials related to Products which have been placed in the possession or under the custody or control of the Representative shall be delivered by the Representative to Biotronik.

    b]    All debts due Biotronik by the Representative shall become immediately due and payable, and the Representative shall refrain and cause its employees, salespersons, agents and associate representatives to refrain from promoting or selling Products.

    c]    No termination of this Agreement shall operate to terminate any obligations on the part of the Representative which, by their terms, survive termination of this Agreement.

40] Damages Upon Improper Termination or Default.

The parties agree that in the event of default or improper termination, the injured party is entitled to damages and to appropriate legal or equitable relief. In addition, the prevailing party is entitled to court costs plus reasonable attorney's fees should litigation be necessary to establish which party was injured and/or suffered damages thereby.

41] Confidentiality.

The terms and conditions of this Agreement are to be held in strictest confidence and are not to be disclosed by the Representative to any third party other than appropriate Biotronik personnel.

42] Attorney's Fees.

If any suit or action is brought by either party to enforce any provision in this Agreement, or to collect any payment due hereunder, the prevailing party in such suit or action, and in any appeal thereof, shall be entitled to recover from the other party its reasonable attorney's fees as fixed by the court in which the suit or action is tried and in which the appeal, if any, is heard, together with its costs and disbursements related thereto.

43] Choice of Law.

    a]    This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Oregon. The Representative acknowledges that this Agreement





is entered into in the State of Oregon and consents to personal jurisdiction in the Circuit Court of the State of Oregon for the County of Clackamas in connection with any action, suit or claim which in any way relates to or arises out of this Agreement.

b]    At Biotronik's sole discretion, any controversy, claim or dispute arising from this Agreement may be settled and resolved by arbitration in accordance with the rules of the American Arbitration Association then in effect in the City of Portland, Oregon, by three arbitrators appointed according to those rules. Any award granted under such arbitration shall be final and conclusive upon the parties to this Agreement, and judgment upon such award may be entered in any court having jurisdiction thereof, and no appeal shall lie thereafter.

This Agreement is effective the day and year first above written.

Biotronik, Inc.                                          Representative

_____                    _____
Thomas V. Brown                                     Charan G. Reddy, Rep Principal
Executive Vice President

_____8/03/05_____                    _____8/23/05_____
Date Signed                                             Date Signed

Biotronik, Inc.                                          Charan Medical International, Inc.
  6024 Jean Road
  Lake Oswego, OR  97035-5369

                                                              _____
                                                              Charan G. Reddy, President

                                                              _____8/23/05_____
                                                              Date Signed

                                                              Charan G. Reddy
                                                              Charan Medical International, Inc.
                                                                612 Sophia Lane
                                                                Shreveport, LA  71115



